**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

WALTER NYE, ET AL,

                              Plaintiffs,            Civ. No. 08-3481 (DRD)


v.                                                   **O P I N I O N**


INGERSOLL-RAND COMPANY,

                              Defendant.


JAMES CALVIN BROWN, ET AL,

                              Plaintiffs,            Civ. No. 08-4260 (DRD)


v.


INGERSOLL-RAND COMPANY,

                              Defendant.

THEODORE E. BOND, ET AL,

                             Plaintiffs,

v.

INGERSOLL-RAND COMPANY,

                             Defendant.

Civ. No. 08-5371 (DRD)

*Appearances by:*

THE LANIER LAW FIRM, PLLC
by: Eugene Eudorf, Evan M. Janush, and Kevin Parker
126 East 56th Street
6th Floor
New York, NY 10022

       *Attorneys for Plaintiffs, Walter Nye, et. al.*

HELLRING LINDEMAN GOLDSTEIN & SEIGAL, LLP
by: Bruce S. Etterman
One Gateway Center
Newark, NJ 07102

RUSTY HARDIN & ASSOCIATES, P.C.
by: Rusty Hardin and Ryan Higgins
5 Houston Center
1401 McKinney, Suite 2250
Houston, TX 77010

       *Attorneys for Plaintiffs, Calvin Brown, et. al.*

McCARTER & ENGLISH, LLP
by: Anthony Bartell
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102

       *Attorneys for Defendant*

**DEBEVOISE, Senior District Judge**

This case comes before the court on a Motion to Consolidate by the plaintiffs in three separate cases: <u>Nye, et. al. v. Ingersoll Rand Company</u>, Civ. No. 08-3481, <u>Brown, et. al. v. Ingersoll-Rand Company</u>, Civ. No. 08-4260, and <u>Bond, et. al. v. Ingersoll-Rand Company</u>, Civ. No. 08-5371.  In opposition, Defendant Ingersoll-Rand Company ("Ingersoll-Rand") moves to stay or dismiss in favor of a case pending in the New York Supreme Court, <u>Ingersoll-Rand v. Norton, et. al.</u>, Index No. 2008004682 ("New York action"), which it argues provides a more comprehensive and convenient means of disposing of the claims asserted in the <u>Nye</u>, <u>Brown</u>, and <u>Bond</u> actions.  Since the three cases pending before this court involve common questions of law and fact, those cases will be consolidated.  Defendant's Motion to Stay or Dismiss will be denied because there is no strong federal policy against allowing the litigation to proceed that would justify abstention by this court.

## I. BACKGROUND

The <u>Nye</u>, <u>Brown</u>, and <u>Bond</u> actions arise out of facts substantially similar to those in two previous cases that were consolidated and heard by this court: <u>Ingersoll-Rand Company v. Barnett, et.al.</u>, and <u>Antoun, et. al. v. Ingersoll-Rand</u>, Consol. Civ. No. 05-1636 (DRD).  The court's October 30, 2006 and September 26, 2007 opinions from those cases summarize the circumstances which form the basis for Plaintiffs' claims, <u>see</u> 2006 U.S. Dist. LEXIS 78836, 2007 U.S. Dist. LEXIS 12248, which are nonetheless repeated below for the sake of comprehensiveness.

**A.  The 2000 Sales Incentive Plan**

Before February 2000, Dresser-Rand was a joint venture owned 49 percent by

3

Ingersoll-Rand and 51 percent by Dresser Inc.  In August 1999, Ingersoll-Rand announced that it intended to sell its interest in Dresser-Rand to Dresser Inc.  Consistent with its rights under the joint venture agreement, however, Dresser Inc. elected not to purchase Ingersoll-Rand's interest. Instead, Dresser Inc. sold its 51 percent interest to Ingersoll-Rand in February 2000 for approximately $543 million, at which time Dresser-Rand became a wholly-owned subsidiary of Ingersoll-Rand.

Thereafter, Ingersoll-Rand desired to divest itself of its interest in Dresser-Rand.  To further that purpose and to achieve a desirable sale price for Dresser-Rand, Ingersoll-Rand adopted the Sales Incentive Plan ("2000 SIP").  The 2000 SIP was meant "to reward key employees for their contributions toward maximizing [earnings] and consequently, a desirable sale price for Dresser-Rand Company."  It specifically noted that "[t]his plan is in lieu of any grant from a Stock Appreciation Right (SAR) Plan and/or Stock Option program for the years 2001, 2002 and 2003."

The 2000 SIP included sections governing its "effective date[s]" and award grants to employees who were terminated before the closing of the sale.  The former provided that "[t]he plan is effective September 1, 2000 and will remain in effect until Dresser-Rand Company is sold," while the termination provision stated:

> An employee who voluntarily terminates or is involuntarily terminated by the Company for any reason before the closing date of the sale, with the sole exceptions of death, disability, or retirement shall not receive or be entitled to any award from this plan. For those employees [sic] who leave the Company for the reason of death, disability or retirement will receive a pro-rated award based on the time they were actively employed during the period from the effective date of this plan to December 31, 2002. Any payment due will be made within 90 days from December 31, 2002.

4

Additionally, the SIP contained a section on how the value of an SVU should be determined, which provided in part that "[a]ny award under this plan will be paid no later than 90 days following the closing date of the sale of Dresser-Rand Company."

When Dresser-Rand was not sold by December 31, 2002, Ingersoll-Rand abandoned its efforts for a time and then, in 2004, initiated a new attempt to sell. In connection with its renewed sale efforts, Ingersoll-Rand devised a new sale reward plan (the "2004 Plan"). On October 31, 2004, Ingersoll-Rand sold Dresser-Rand.

**B. The <u>Antoun</u> and <u>Barnett</u> Actions**

On February 10, 2005, Ingersoll-Rand filed a suit in the Superior Court of New Jersey seeking a declaratory judgment that it bore no obligation to various former employees under the 2000 SIP because the plan had expired prior to the sale of Dresser-Rand. <u>See Ingersoll-Rand Company v. Barnett</u>, et al., Docket No. L-1075-05. The defendants in that proceeding subsequently removed to this court. On June 1, 2005, several former Dresser-Rand employees, including five defendants in the Barnett action, filed a separate suit in this court. See Antoun, et. al. v. Ingersoll-Rand Company, Civ. No. 05-2834 (DRD). The plaintiffs in <u>Antoun</u> sought payment under the 2000 SIP for the 2004 sale of Dresser-Rand. As with the defendants in Barnett, Ingersoll-Rand contended that the Antoun plaintiffs were not entitled to payments under the 2000 SIP because the plan expired prior to the sale of Dresser-Rand. Additionally, Ingersoll-Rand claimed that each of the Antoun plaintiffs had waived his right to payments under the 2000 SIP by executing a severance agreement containing broad release language when he left Dresser-Rand. With the consent of the parties, the court consolidated the <u>Antoun</u> and <u>Barnett</u> actions on

August 19, 2005.

After the Antoun and Barnett actions were consolidated, Ingersoll-Rand moved for partial summary judgment against the Antoun plaintiffs.  Ingersoll-Rand contended, in the first instance, that there was no plan in effect when the Antoun Plaintiffs retired because the 2000 SIP expired on December 31, 2002.  In the alternative, Ingersoll-Rand claimed that, even if the plan did not expire, the severance agreements signed by the Antoun plaintiffs released Ingersoll-Rand from any obligation to pay under the 2000 SIP.  Although those agreements varied slightly, each explicitly released Ingersoll-Rand, Dresser-Rand, its parents, affiliates and subsidiaries from "any and all charges, complaints, claims, and liabilities of any kind suspected or unsuspected ... which [the employee] at any time heretofore had or claimed to have or which [the employee] may have or claim to have regarding events that have occurred as of the date of this Agreement."

The Antoun plaintiffs argued in opposition to Ingersoll-Rand's request for partial summary judgment that the 2000 SIP did not expire because its plain language mandated that it would remain effective until the sale of Dresser-Rand.  Additionally, the Antoun plaintiffs moved for partial summary judgment declaring that the releases in the severance agreements did not bar their claims and striking defenses asserted by Ingersoll-Rand on the basis of those releases.  In support of that motion, the Antoun plaintiffs contended that the releases contained in their severance agreements did not apply to claims based on the 2000 SIP because the severance agreements were entered into before the 2004 sale of Dresser-Rand, and therefore the claims based on that sale had not accrued at the time the releases became effective.

In ruling on the parties' motions for summary judgment, the court held on October 30, 2006 that (1) because the unambiguous language of the 2000 SIP provided that "[t]he Plan is

6

effective September 1, 2000, and will remain in effect until Dresser-Rand is sold," the plan did not expire and was in effect when Dresser-Rand was sold in August 2004, and (2) there was no evidence to support a finding that either the <u>Antoun</u> plaintiffs or the company representatives who negotiated the severance agreements intended the releases to cover payment of the SVUs under the 2000 SIP.  In support of the latter ruling, the court noted that the sale of Dresser-Rand had not yet occurred at the time the releases were executed, and thus the <u>Antoun</u> plaintiffs' claim for payment of SVUs had not accrued.  Therefore, the court denied Ingersoll-Rand's motion for partial summary judgment, granted the <u>Antoun</u> plaintiffs' request for a declaration that the releases contained in their severance agreements did not bar their claims for payment under the 2000 SIP, and struck the defenses asserted by Ingersoll-Rand on the basis of those releases.

After the court's ruling that the 2000 SIP did not expire and the severance agreements did not bar claims for payments under the plan, the <u>Antoun</u> plaintiffs moved for summary judgment on their contention that Ingersoll-Rand breached the 2000 SIP by withholding payments after the 2004 sale of Dresser-Rand.  Despite the fact that extensive discovery had already been completed, Ingersoll-Rand initially argued that the motion should be denied pursuant to Federal Rule of Civil Procedure 56(f) because it could not present facts essential to its opposition without taking further depositions.  In response to that assertion, the court deferred consideration of the <u>Antoun</u> plaintiffs' motion for summary judgment and permitted Ingersoll-Rand to proceed with depositions.  Over the next ten months, the depositions were taken and the parties were allowed to submit voluminous additional papers and supplemental briefs.

On September 26, 2007, the court ruled that none of the extrinsic evidence submitted by Ingersoll-Rand was sufficient to alter the clear and unambiguous language in the 2000 SIP stating

that it would remain in effect until the sale of Dresser-Rand.  In fact, the court found that the evidence submitted by Ingersoll-Rand in support of its contention that the plan expired on December 31, 2002 actually served to reinforce the 2000 SIP's provisions stating that it would be effective until Dresser-Rand was sold.  Therefore, the court granted the <u>Antoun</u> plaintiffs' motion for summary judgment and held that Ingersoll-Rand was liable to those plaintiffs for payments due under the 2000 SIP.

After the court held that Ingersoll-Rand was liable for payments due under the 2000 SIP, the parties entered into a contentious dispute over the appropriate amount of damages to be awarded.  Both parties filed motions for summary judgment requesting that the court adopt their respective calculations, along with a deluge of letters and other communications relating to the prospective damages award.  Thankfully for all involved, the parties eventually reached a confidential settlement agreement disposing of all claims.  Pursuant to that agreement, the court vacated and withdrew its October 30, 2006 opinion holding that the 2000 SIP did not expire and the <u>Antoun</u> plaintiffs' claims were not barred by the releases in their severance agreements, and its September 26, 2006 opinion holding that Ingersoll-Rand was liable for payments due under the 2000 SIP.

## C.  The <u>Brown</u>, <u>Nye</u>, and <u>Bond</u> Actions

The three actions at issue in the current motions assert claims for breach of the same agreement, the 2000 SIP, as <u>Antoun</u> and <u>Barnett</u>.  The first of those cases, <u>Nye, et. al. v. Ingersoll-Rand Company</u>, Civ. No. 08-3481 (DRD) ("<u>Nye</u>"), which was filed with this court on July 14, 2008, involves claims for payments allegedly due under the 2000 SIP by 63 individuals who worked for Dresser-Rand until its sale.  Similarly, the claim in Brown, et. al. v. Ingersoll-

Rand Company, Civ. No. 08-4260 (DRD) ("Brown"), involves 50 plaintiffs who worked for Dresser-Rand until it was sold.  That case was filed with this court on August 22, 2008.  In the final case, Bond, et. al. v. Ingersoll-Rand Company, Civ. No. 08-05371 (DRD) ("Bond"), 17 individuals who (like the plaintiffs in Antoun) worked for Dresser-Rand at the time the 2000 SIP was promulgated but left the company prior to the sale assert claims for payment pursuant to that agreement.  That case was filed on October 31, 2008.

Using identical language in their complaints, the Nye, Brown, and Bond plaintiffs assert breach of contract and promissory estoppel claims alleging that the 2000 SIP remained in force at the time of the sale and Ingersoll-Rand wrongfully withheld payments due under that agreement. (Nye Compl. ¶¶ 86-96.)  As was the case in Antoun and Barnett, Ingersoll-Rand opposes the plaintiffs' claims by arguing that the 2000 SIP expired prior to the sale of Dresser-Rand.  In the alternative, Ingersoll-Rand contends that the Nye and Brown plaintiffs waived their right to payments under the 2000 SIP by agreeing to compensation under a new plan announced on August 26, 2004 ("2004 Plan").[1]  (Def.'s Br. Supp. Mot. Dismiss 5.)  With respect to the latter argument, the Nye and Brown plaintiffs claim that they were fraudulently induced to waive their claims based on the 2000 SIP and accept benefits under the 2004 Plan, stating that:

> [Ingersoll-Rand's] agreement to sell Dresser-Rand was announced publicly on August 26, 2004.  In its announcement, [Ingersoll-Rand] stated that the sale of Dresser-Rand completed "the last of a series of major divestitures in recent years as part of a strategy to transform the Company...
>
> On that same date, [Ingersoll-Rand] distributed a letter dated August 26, 2004 from Herbert L. Henkel, the Chairman, President and Chief

---

[1] The Bond plaintiffs were no longer employed by Dresser-Rand at the time of the sale, and thus were not eligible to participate in the 2004 Plan.

Executive Officer of [Ingersoll-Rand], advising certain employees of Dresser-Rand that the [2000 SIP] had expired at some unidentified time before the sale. Mr. Henkel's August 26, 2004 letter was, upon information and belief, the first notice to any current or former Dresser-Rand employees that, according to [Ingersoll-Rand], the [2000 SIP] had "expired." No explanation was provided as to how Henkel had the authority to unilaterally terminate the [2000 SIP].

Henkel also announced that [Ingersoll-Rand] was commencing a new reward plan (<u>after</u> already having negotiated the applicable sale) which provided far less compensation to Plaintiffs than would have been allocated under the [2000 SIP]. Plaintiffs were advised that the original SVUs had "absolutely no value" and if they did not accent the new Plan they "risked losing everything." A number of Plaintiffs had direct interaction with Henkel as well as other members of upper management wherein those threats and fraudulently inducing statements were repeated and elaborated upon. As a result, each of the Plaintiffs received a fraction of the payment to which they were entitled under the [2000 SIP].

(<u>Nye</u> Compl. ¶¶ 83-85); (<u>Brown</u> Compl. ¶¶ 70-72) (emphasis in original.)

In addition to the breach of contract and promissory estoppel causes of action, the Nye, Brown, and Bond complaints make identical allegations in asserting a claim for attorneys' fees pursuant to Texas law. Those averments state that:

At the time [Ingersoll-Rand] established the [2000 SIP] for the benefit of certain employees of Dresser-Rand, Plaintiffs were employed by Dresser-Rand in Texas.

The amounts owed to Plaintiffs, pursuant to the [2000 SIP], constitute wages for services they each rendered.

Section 38.001 of the Texas Civil Practice and Remedies Code, Tex. Civ. Prac. & Rem. Code § 38.001(2), requires an award of reasonable attorneys' fees, in addition to compensatory damages and costs, associated with a successful claim for wages.

10

> Section 38.001 of the Texas Civil Practice and Remedies Code, Tex.
> Civ. Prac. & Rem. Code § 38.001(2), requires an award of reasonable
> attorneys' fees, in addition to compensatory damages and costs,
> associated with a successful claim for breach of contract.[2]

(Nye Compl. ¶¶ 97-101); (Brown Compl. ¶¶ 84-87); (Bond Compl. ¶¶ 52-55.)

## D.  The New York Action

Before the Nye, Brown, and Bond plaintiffs sought relief in this court, Ingersoll-Rand

instituted a proceeding in the Supreme Court of New York for Erie County seeking a declaratory

judgment that it is not liable for payments under the 2000 SIP because that agreement expired

prior to the 2004 sale of Dresser-Rand.  See  Ingersoll-Rand v. Norton, et. al., Index No.

2008004682.  That case, which was filed on April 23, 2008, originally named as defendants 20

individuals who had been employed by Dresser-Rand at the time the 2000 SIP became effective,

but left that company prior to the 2004 sale.  Additionally, the Complaint named as defendants

"John Does" who "worked for Dresser-Rand but remain[ed] unknown to Ingersoll-Rand" and

"may assert claims under the expired [2000] SIP."  (Pl.'s Br. Opp'n Mot. Dismiss,

Ex. D, ¶ 23.)  The Complaint went on to state that "[i]f and when Ingersoll-Rand secures

information identifying the John Doe defendants, Ingersoll-Rand will amend its Complaint to

include that information."  (Id.)

On July 24, 2008, ten days after the Nye action was filed in this court, Ingersoll-Rand

amended its Complaint in the New York proceeding to name the Nye plaintiffs as defendants in

---

[2] The statute provides that "[a] person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for ... labor performed."  Tex. Civ. Prac. & Rem. Code § 38.001(2).  Questions remain as to whether the payments sought by Plaintiffs pursuant to the 2000 SIP meet the definition of "labor performed."  However, those issues need not be decided at this stage in the proceedings.

that case.  On August 28, 2008, Ingersoll-Rand amended its New York Complaint a second time

to name the <u>Brown</u> plaintiffs, who had filed in this court five days earlier.  No discovery has been

completed, and no hearings or other proceedings have been held in the New York action.  In fact,

the New York court has not yet asserted jurisdiction over the <u>Nye</u>, <u>Brown</u>, and <u>Bond</u> plaintiffs.

None of those individuals reside in New York.  They maintain that the New York court lacks

personal jurisdiction and have moved on that basis to dismiss the state court action.  Arguments

on that motion are scheduled for December 18, 2008.

**D.  The Current Motions**

On September 17, 2008, the <u>Brown</u> plaintiffs filed a motion to consolidate their claims

with those in <u>Nye</u>.  Rather than dispute the <u>Brown</u> plaintiffs' claim that the two cases should be

consolidated because they arise out of the same factual circumstances and pose the same

questions of law, Ingersoll-Rand opposed the motion on the grounds that both actions should be

dismissed or stayed in favor of the New York action.

Ingersoll-Rand first articulated its argument in favor of a stay or dismissal by filing

identical motions for that relief in both the Nye and Brown proceedings on October 3, 2008, three

days before their brief in opposition to the Brown plaintiffs' motion to consolidate was due.  At

oral argument, counsel for Ingersoll-Rand stated that the Bond action, which was filed after

Ingersoll-Rand's motion in the other proceedings, should be stayed or dismissed for the same

reasons as the other two actions.  Namely, Ingersoll-Rand argues that "exceptional

circumstances" require this court to dismiss or grant a stay in favor of the New York proceeding

because (1) that action was filed prior to the cases before this court, (2) refusal to stay or dismiss

would waste judicial resources by requiring piecemeal litigation, (3) the claims at issue involve

state law causes of action that are best adjudicated by a state court, (4) only the New York

proceeding can fully decide the rights of all possible claimants, and (5) the New York state court

is the more convenient forum.  (Def.'s Br. Supp. Mot. Dismiss 8-14.)

## II.  DISCUSSION

As a preliminary matter, the court notes that the pending motions pose two separate

questions.  For the sake of convenience and clarity, the motion to consolidate will be addressed

first, and the identical motions to dismiss or stay the Nye, Brown, and Bond actions will be dealt

with together.

## A.  Plaintiffs' Motion to Consolidate

Federal Rule of Civil Procedure 42(a) grants trial courts broad discretion to "streamline

and economize pretrial proceedings so as to avoid duplication of effort, and to prevent conflicting

outcomes in cases involving similar legal and factual issues" by consolidating related cases.  In re

TMI Litig., 193 F.3d 613, 724 (3d Cir. 1999).  The rule states that a court may consolidate such

cases or "issue any other orders to avoid unnecessary cost or delay" if the actions "involve a

common question of law or fact."  Fed. R. Civ. P. 42(a).

While consolidation provides "convenience and economy of administration" by allowing

related suits to be heard together, it "does not merge the suits into a single cause, or change the

rights of the parties, or make those who are parties in one suit parties in another."  Id. (quoting

Johnson v. Manhattan Ry. Co., 289 U.S. 479, 497 (1933)).  Thus, an order consolidating related

cases has no bearing on the substantive questions of law and fact underlying those actions.

The common questions of law and fact at issue in the Nye, Brown, and Bond proceedings

clearly warrant consolidating those actions.  The plaintiffs in each case make identical claims for

breach of contract, promissory estoppel, and attorneys fees.  Those claims are based on the 2000
SIP, and will require the court to interpret that document.  Furthermore, Ingersoll-Rand asserts
the same defense – that the 2000 SIP expired on Dec. 31, 2002 and the plaintiffs' were therefore
not entitled to payment for the 2004 sale pursuant to that agreement – in each of the three actions.
In fact, the only issue that is not common to all three cases is Ingersoll-Rand's contention that the
Nye and Brown plaintiffs waived their right to assert claims under the 2000 SIP by accepting
payments under the 2004 Plan.  That issue does not, however, alter the underlying question of
whether the 2000 SIP expired; it will simply require the court to add another layer of analysis in
order to adjudicate the Nye and Brown plaintiffs' claims, and does not justify separately deciding
the common questions posed by the three cases.

   Ingersoll-Rand's own arguments, asserted in its pending motion to stay or dismiss the
Nye, Brown, and Bond proceedings in favor of the New York action, support the court's
conclusion that those cases should be consolidated.  The company filed identical briefs and
affidavits in support of that motion in both the <u>Nye</u> and <u>Brown</u> cases, and stated at oral argument
that the contentions contained in those documents applied with equal force to the <u>Bond</u> plaintiffs.
Having effectively combined the cases for the purposes of saving their attorneys from the
unnecessary labor required by preparing unique filings for each of the three cases, Ingersoll-Rand
is unjustified in asking the court to act differently.  Therefore, the <u>Nye</u>, <u>Brown</u>, and <u>Bond</u> actions
will be consolidated for all purposes.

**B.  Motion to Stay or Dismiss**

   Ingersoll-Rand asks the court to stay or dismiss the <u>Nye</u>, <u>Brown</u>, and <u>Bond</u> actions – cases
in which this court properly has jurisdiction pursuant to 28 U.S.C. § 1332 based on the diversity

of the parties – in favor of the concurrent state proceeding in New York.  Under the doctrine set

forth in Colorado River Water Conservation District v. United States, 424 U.S. 800, 817-819

(1976) and its progeny, the court may grant that relief in cases where "extraordinary

circumstances" weigh in favor of abstention.

      The court notes as a preliminary matter that the criteria for obtaining a stay are the same

as those for dismissal.  In cases such as this one, where the parties and issues in the state and

federal proceedings are the same, the "resolution of the ... case in state court will have a

preclusive effect on the stayed cases." Spring City Corp. v. Amer. Bldgs. Co., 193 F.3d 165, 171

(3d Cir. 1999).  Thus, "[w]hen a district court relies on the Colorado River doctrine to stay a case

in federal court because it is duplicative with a state court proceeding, such a stay will generally

have the practical effect of a dismissal by putting a party 'effectively out of federal court." Id.

(internal quotations omitted).  Therefore, the court must use the same standard in determining

whether to grant either a stay or dismissal.

      It is important to acknowledge at the outset that abstention in favor of a concurrent state

court proceeding is appropriate only in extremely narrow circumstances.  See, e.g., Id. at 818

("[T]he circumstances permitting the dismissal of a federal suit due to the presence of a

concurrent state proceeding ... are considerably more limited than the circumstances appropriate

for [other forms] of abstention."); Ryan v. Johnson, 115 F.3d 193, 197-98 (3d Cir. 1997) (stating

that abstention in favor of a concurrent state proceeding is appropriate "only when there is

evidence of a strong federal policy that all [similar] claims should be tried in the state courts.").

Both the Supreme Court of the United States and the Court of Appeals for the Third Circuit have

repeatedly pointed out the "virtually unflagging obligation of the federal courts to exercise the

jurisdiction given them." <u>Colorado River</u>, 424 U.S. at 817; <u>Spring City</u>, 193 F.3d at 173.  Due to

that obligation, the "general rule regarding simultaneous litigation of similar issues in both state

and federal courts is that both actions may proceed until one has come to judgment, at which

point that judgment may create a res judicata or collateral estoppel effect on the other action."

<u>Spring City</u>, 193 F.3d at 172.  Thus, a district court's decision to abstain in favor of a concurrent

state proceeding "must be grounded on more than just the interest in avoiding duplicative

litigation."  <u>Id.</u>

 The case law governing federal court abstention in favor of concurrent state proceedings

outlines six factors to be considered when determining whether the requisite "extraordinary

circumstances" for such abstention exist: (1) which court first assumed jurisdiction over the

property, if any, at issue, (2) the inconvenience of the federal forum, (3) the desirability of

avoiding piecemeal litigation, (4) the order in which personal jurisdiction was obtained,

(5) whether federal or state law governs the dispute, and (6) whether the state court will

adequately protect the interests of the parties.  See Moses H. Cone Mem. Hosp. v. Mercury

Constr. Corp., 460 U.S. 1, 16 (1983); Spring City, 193 F.3d at 171.  "No one factor is necessarily

determinative," under this test.  Colorado River, 424 U.S. at 818.  Rather, a court must make a

"carefully considered judgment taking into account both the obligation to exercise jurisdiction

and the combination of factors counseling against that exercise."  Id.  "Only the clearest of

justifications will warrant dismissal."  Id.

 On application of the six relevant factors to the circumstances of this case, it would

clearly be inappropriate for this court to abstain in favor of the New York action.  As this case

does not involve an in rem proceeding and there is no property over which to assume jurisdiction,

the first factor is irrelevant.  None of the five remaining considerations support abstention.

### i. Convenience of the Federal Forum

Ingersoll-Rand argues that New York is the most convenient forum for litigating this case because more plaintiffs reside in New York than in any other state.  That contention ignores two critical factors.  First, the majority of the Nye, Brown, and Bond plaintiffs reside outside New York, with some living in such far-flung locations as Singapore, Norway, France, and the United Kingdom.  In fact, only 55 of the 130 plaintiffs in Nye, Brown, and Bond reside in New York.  While Ingersoll-Rand argues strenuously that it would cause inconvenience and hardship for those plaintiffs residing in New York to make the relatively short trip to New Jersey, it has presented no evidence as to why New York presents a more convenient forum for the almost 60 percent of claimants that live outside that state.  More importantly, Ingersoll-Rand's argument ignores the maxim that "a plaintiff's choice of forum is normally due considerable deference." Lony v. E.I. DuPont de Nemours & Co., 935 F.2d 604, 609 (3d Cir. 1991).  The amount of deference given may be reduced based on foreign citizenship, but the fact that a plaintiff resides outside the chosen forum does not strip that plaintiff's choice of all weight.  Id.

In this case, several considerations favor affording deference to the plaintiffs' chosen forum.  Since Ingersoll-Rand is based in New Jersey, the various company records that will undoubtedly make up much of the material subject to discovery is presumably stored in that state.  Furthermore, company officials and other witnesses will be more easily produced if the litigation takes place close to their offices.  Finally, the plaintiffs having submitted themselves and Ingersoll-Rand being headquartered in New Jersey, this court is conveniently situated to exercise jurisdiction over all parties.  Even if the New York court is able to exercise personal jurisdiction

over all the <u>Nye</u>, <u>Brown</u>, and <u>Bond</u> plaintiffs – a point which those plaintiffs dispute but which is outside the scope of this ruling – the existence of jurisdiction in New York would not, as Ingersoll-Rand contends, render New Jersey an inconvenient forum.  To the contrary, the aforementioned ease with which discovery and witness examinations could be conducted, along with the deference afforded to the plaintiffs' choice of forum, demonstrates that this court is a convenient forum and militates against abstention.

### ii. Desirability of Avoiding Piecemeal Litigation

In support of its contention that this court should abstain in favor of the New York proceeding, Ingersoll-Rand cites case law expressing a concern for "the avoidance of piecemeal litigation," which it contends is the "paramount factor in ... abstention analysis."  (Def.'s Reply Br. Supp. Mot. Dismiss 4.)  While Ingersoll-Rand is correct in asserting that courts seek to avert duplicative litigation when possible, its argument that abstention is appropriate in this case fundamentally misconstrues the applicable precedent by elevating concerns for judicial economy over the court's obligation to exercise its lawful jurisdiction.  The law on this point is clear: "<u>Colorado River</u> abstention must be grounded on more than just the interest in avoiding duplicative litigation."  <u>Spring City</u>, 193 F.3d at 171-72.  "Even though it is important to prevent 'piecemeal litigation,' a stay [or dismissal] is appropriate only when there is a 'strong federal policy against such litigation.'" <u>Id.</u> at 172 (quoting <u>Ryan</u>, 115 F.3d at 197).

An examination of Colorado River itself serves to elucidate the type of "strong federal policy" against duplicative litigation that is necessary to justify abstention in favor of a concurrent state proceeding.  That case dealt with the allocation of water rights in Colorado.  The Supreme Court found that abstention in favor of a Colorado state action was appropriate because

18

the McCarran Amendment, 43 U.S.C. § 453, evinced a strong policy in favor of the "avoidance of piecemeal adjudication of water rights in a river system." Colorado River, 424 U.S. at 819. That policy, stated the Court, was "akin to that underlying the rule that jurisdiction be yielded to the court first acquiring control of property, for the concern in such instances is with avoiding the generation of additional litigation through permitting inconsistent dispositions of property." Id. Rather than seeking a determination of the rightful ownership of a physical object like the water at issue in Colorado River, the dispute in Nye, Brown, and Bond is a simple suit for breach of contract. Given the absence of a strongly articulated policy against piecemeal litigation of that issue, Ingersoll-Rand's argument that this court should abstain is unavailing and must be rejected.

### iii. Order in Which Personal Jurisdiction was Obtained

In its motion to stay or dismiss, Ingersoll-Rand contends that courts consider "the order in which the parties initiated the actions" as a factor in deciding whether to abstain in favor of a concurrent state court proceeding. (Def.'s Br. Supp. Mot. Dismiss 8.)[3]  The company asserts that "Third Circuit courts ... regularly defer to the first filed action." (Id. at 9.)  That claim is erroneous.  As is made clear by numerous opinions – including those cited by Ingersoll-Rand in support of its argument on this point – from both the Court of Appeals and the Supreme Court, it is not the date the actions are filed which is significant for the purposes of our abstention analysis.  Rather, courts look to "the order in which jurisdiction was obtained by the concurrent

---

[3] Both sides devote a significant portion of their arguments to a dispute over whether the Nye, Brown, and Bond plaintiffs were properly joined as defendants in the New York action. Because the court holds that it is the first court to obtain jurisdiction – rather than the first suit to be filed – that is significant for the purposes of abstention analysis, those arguments need not be addressed.

forums" in deciding whether to abstain in favor of a state court action.  Colorado River, 424 U.S. at 819 (emphasis added); see also Moses H. Cone, 460 U.S. at 15; Ryan, 115 F.3d at 196; Spring City, 193 F.3d at 171.

As mentioned above, the New York court has yet to assert jurisdiction over the Nye, Brown, and Bond plaintiffs.  Those individuals, none of whom reside in New York, dispute Ingersoll-Rand's claim that they are subject to the personal jurisdiction of the New York court and have moved on that basis to dismiss the state action.  While it is beyond the scope of this ruling to opine on whether the plaintiffs are subject to the New York court's jurisdiction, the existence of disputes regarding that jurisdiction is significant to the question of which court first obtained jurisdiction.  Since the New York court has not yet decided whether it enjoys jurisdiction over the plaintiffs, it cannot be argued that the state proceeding first "obtained" jurisdiction for the purposes of abstention.  Thus, Ingersoll-Rand's contention that the New York action was filed before this proceeding is irrelevant and does not support an exercise of abstention.  In fact, an analysis of which court first obtained jurisdiction weighs against granting a stay or dismissal because this court has asserted its diversity jurisdiction pursuant to 28 U.S.C. § 1332, while the New York court has not yet ruled on the question of whether it has jurisdiction over the plaintiffs.

### iv.  Governing Law

Like the preceding considerations, the fifth factor in our six-part Colorado River abstention analysis – whether federal or state law governs the substantive claims at issue – does not support Ingersoll-Rand's request for a stay or dismissal.  "Abstention cannot be justified merely because a case arises entirely under state law."  Ryan, 115 F.3d at 199.  In determining

whether abstention is appropriate, the court's task is "not to fund some substantial reason for the exercise of federal jurisdiction," but rather "to ascertain whether there exist 'exceptional circumstances, the 'clearest of justifications,' that can suffice under <u>Colorado River</u> to justify the <u>surrender</u> of that jurisdiction." <u>Moses H. Cone</u>, 460 U.S. at 25-26 (quoting <u>Colorado River</u>, 424 U.S. at 818). Thus, it is only in "rare circumstances" that "the presence of state-law issues may weigh in favor of that surrender." <u>Id.</u>

Although there is no question that the claims advanced by the <u>Nye</u>, <u>Brown</u>, and <u>Bond</u> plaintiffs arise out of state law governing contracts, it is less clear that New York law governs the resolution of those issues. Ingersoll-Rand goes only so far as to allege that "New York law ... may well apply to this action," and qualifies that inconclusive contention by stating that "[e]ven if New Jersey law applies to this dispute, the New York state court remains well equipped to interpret such state law and to resolve the disputes arising thereunder." (Def.'s Br. Supp. Mot. Dismiss 12.)

While the New York court is obviously capable of interpreting the contracts at issue in this case, Ingersoll-Rand has presented no evidence that this court is less suited to the task. Furthermore, Ingersoll-Rand gives no justification for its contention that the New York court is a more ideal adjudicator of New Jersey law, an argument which would be ill-conceived given the frequency with which that state's law is applied by this district in diversity cases and pursuant to our supplemental jurisdiction over state law claims asserted in cases arising under federal law. Given the fact that the claims at issue in this case involve simple matters of contractual interpretation (rather than any unsettled area of state jurisprudence) and are not necessarily governed by New York law, the state law nature of the claims does not give clear justification for

this court to surrender its jurisdiction and therefore does not weigh in favor of abstention.  See Ryan, 115 F.3d at 200 ("Although it is possible that some case could involve a skein of state law so intricate and unsettled that resolution in the state courts might be more appropriate, traditional negligence law does not fit that description" because it is an area "in which federal courts are called upon routinely to predict state law.").

### v.  Adequacy of State Forum

Similarly, the final consideration in our six-part Colorado River abstention analysis – whether the state court will adequately protect the interests of the parties – does not support Ingersoll-Rand's request for a stay or dismissal.  "[T]he question whether parties' interests are protected is only relevant when they are not; that is, 'when the state court is adequate, this factor carries little weight.'" Spring City, 193 F.3d at 172 (quoting Ryan, 115 F.3d at 200).  Therefore, since neither party contends that the New York court would be unable to effectively address the issues raised by this case, the adequacy of that court does not weigh either for or against abstention.

22

### III.  CONCLUSION

In light of the nearly-identical questions of fact and law posed by the <u>Nye</u>, <u>Brown</u>, and <u>Bond</u> actions, the plaintiffs' motion to consolidate those cases is granted.  Since none of the six factors outlined in <u>Colorado River</u> and its progeny weigh in favor of abstention, Ingersoll-Rand's motion to stay or dismiss is denied.

The court will enter an order implementing this opinion.

**s/ Dickinson R. Debevoise**
DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: November 20, 2008